WALTER L. WAGNER
532 N 700 E
Payson, UT 84651
retlawdad@hotmail.com
808-443-6344

RECEIVED
AND FILED

2014 APR 11  PM 2 14

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
| *In re* | Case No. 13-50833-BTB (Ch. 11) |
| WORLD BOTANICAL GARDENS, INC. | |
| CALVIN ANDRUS, WALTER L. WAGNER | **A.P. No. 13-05062-btb** |
| Plaintiffs | **MEMORANDUM OF LAW IN RESPONSE TO MOTIONS TO DISMISS** |
| vs. | |
| WORLD BOTANICAL GARDENS, INC., MARK ROBINSON, STEVE BRYANT, KENNETH FRANCIK, LESLIE COBOS, PRESTON MICHIE, DOES 1-10, | Date:    April 23, 2014 Time:    2:00 P.M. |
| Defendants | |

## MEMORANDUM OF LAW IN RESPONSE TO MOTIONS TO DISMISS

Plaintiffs Calvin Andrus and Walter Wagner respectfully submit the following *Memorandum of Law* in response to the two pending motions to dismiss, the one filed by the US Bankruptcy Trustee, and the other by the defendants.

I

## GENERAL INTRODUCTION

The US Bankruptcy Trustee filed a motion to dismiss the case entirely, or alternatively to convert to Chapter 7 liquidation, based on the failure of WBGI to follow normal reorganization procedures (failure to pay monthly fees; failure to file monthly financial accounting statements). Additionally, the defendants filed a motion to dismiss the adversary complaint based on a conglomeration of allegations essentially resting on the frauds that the defendants were able to successfully work earlier in Hawaii and in Nevada. Plaintiffs will address those two motions below, but wish to first recapitulate uncontested facts.

II

## UNCONTESTED FACTS

1.    It is uncontested that plaintiffs Wagner and Andrus organized their botanical garden venture in 1994 in Utah, and that they organized a Partnership for raising funds (*World Botanical Gardens Joint Venture Partnership;* hereinafter

2

"Partnership"), which monies in turn were loaned to WBGI to develop the first of what they believed would become a series of botanical gardens, each as a separate corporation, spanning the globe. That dollar amount is presently being tabulated, but is approximately $3,000,000 that was loaned by the Partnership to WBGI over the course of several years.

2.      It is uncontested that the first WBGI corporation that was formed was the Hilo, Hawaii botanical garden incorporated in Utah in 1995, and that WBGI subsequently incorporated the Hilo, Hawaii botanical garden anew in Nevada in April 2001, and that all of the assets (the WBGI Hawaii land contracts + equity assets) and liabilities of the Utah corporation were transferred to the Nevada corporation in 2001.

3.      It is uncontested that the second botanical garden originally intended by the Partnership to be formed at another location (other than Hawaii) never materialized and no corporation ever formed for it, and that the only corporation(s) formed were the two for the Hawaii botanical garden (WBGI), namely the dissolved Utah corporation and the extant Nevada corporation presently before this Court.

4.      It is uncontested that WBGI never repaid any of the money it borrowed from the Partnership and its 600+ partners to develop the botanical garden.

5.      It is uncontested that plaintiff Wagner worked full time at developing the

botanical garden in Hawaii between 1995 and 2003, with only partial compensation.    It is uncontested that Wagner received approximately $122,013.25 as partial compensation for his work (with most of it during the last two years).    It is uncontested that his full-time work between 1995 and 2004 averaged approximately 3,000 hours/year (50 weeks at 60 hours/week) for nine years, or approximately 27,000 hours.    It is uncontested that Hawaii has a minimum wage law that is currently $7.25/hour, and that 27,000 hours would equate to $195,750 at that minimum wage rate.    The *quantum meruit* value of his work is contested, with defendants apparently arguing it is 'zero', while plaintiff Wagner argues the q*uantum meruit* value is approximately triple that amount based on similar amounts earned elsewhere in Hawaii, and with interest added thereon is even larger.

6.    It is <u>uncontested</u> that Mr. Andrus is a WBGI shareholder by way of numerous sworn affidavits filed with this Court. It is "contested" by Mr. Darby that he is a WBGI shareholder (as well as original partner in the Partnership), but only by way of Mr. Darby's false statements guised as 'arguments.'[1]

7.    It is uncontested that neither the defendants nor WBGI notified the WBGI shareholders or Partnership partners of any of their purported land sales, neither

---

[1] Page 2, paragraph 3; page 12, paragraph 51; page 24, paragraph 108; of the defendants' motion to dismiss etc.

4

before the sale nor after, by regular means such as shareholder newsletter, publication on the WBGI website, etc.    It is uncontested that a few (approximately 30) WBGI shareholders did attend WBGI shareholder meetings when it was announced, after the fact, that the defendants had sold WBGI land assets.

8.    The following facts are uncontested by way of any contesting affidavits countering the affidavits filed by plaintiffs, which affidavits detail facts as follows:

a)    There was no actual trial in Hawaii pertaining to the suit initiated by defendants in 2005 entitled *WBGI v. Wagner*.  Rather, the "trial" was a fraud on that court in that the Wagners were removed from the courtroom by illegal and criminal agency of defendant Francik who lied to a grand jury to obtain a secret arrest warrant.  The facts would have shown, had the Wagners been allowed to testify, that all of the actions that he and Linda Wagner engaged in as officers and directors of WBGI were in accordance with the principles of NRS 78.138, and that he is presumed as a matter of law to have acted in good faith, and that the decisions he made for WBGI were within the "business judgment rule".

b)    The purported "trial" in Hawaii was fraudulent not only because it was not an actual trial with two sides giving evidence, but rather the side presenting "evidence" (while the Wagners were at the Hilo jailhouse due to Francik's criminality) presented instead frauds on that court, and that the actual facts were

exactly opposite to those claimed by Mr. Darby and are as follows:

i)   "loan" payments to Linda Wagner totaling $9,000  were instead repayments of loans she had made to WBGI and were falsely mis-characterized as loans to Linda Wagner;

ii)  Rent payments over several years of approximately $22,813.28 for the Wagner residences were approved by the WBGI board of directors as a valid expenditure as it doubled as WBGI office, WBGI nursery, and WBGI storage area (expenses still showing up on the 2013 financial statements filed herein) and was not an unreasonable expense, particularly in light of the fact that Wagner was not receiving his salary and WBGI made similar payments for the following ten years;

iii) Health and Dental insurance payments of approximately $42,617.56 by WBGI on behalf of the Wagners over several years was required by Hawaii state law mandating employers provide health coverage to employees, was approved by the WBGI board of directors, and it was a reasonable amount for standard HMSA insurance;

iv)  Miscellaneous "personal" expenses for artwork, etc. in the sum of approximately $2,215.75 were for items still retained by WBGI, were approved by the WBGI board of directors, did not enrich the

Wagners, and were valid reasonable expenditures for artwork to be owned by the corporation;

v)   Alleged "other personal expenses" of approximately $152,779.03 were actually WBGI expenditures made on credit cards Wagner loaned to WBGI, and were not personal expenditures made for Wagner, but falsely mis-characterized as such;

vi)   "Wellness Center/other Wagner ventures" expenses of approximately $65,650.34 were loans made by WBGI to outside entities, in part for the purpose of obtaining good will with one of the partners (Cleo Carlile), were approved by the WBGI board of directors, and did not personally benefit Wagner;

vii)   Biegel Law Firm expenses of approximately $47,789.69 were approved by the Biegel Law Firm (a reputable California law firm) and the WBGI board of directors as legitimate legal expenses to preclude WBGI from falling victim to a fraudulent lawsuit;

viii)   the purchase of TMK No. (3) 3-1-004:027 for approximately $42,928.25 is a duplicate charge, already contained in the approximately $122,013.25 salary advanced to Wagner (before inclusion of that $42,928.25 the salary that was paid to Wagner had been only $80,085.00) and was a partial payment of Wagner's past-

due salary, approved by the WBGI board of directors.

In essence, all of the purported 'claims' in the suit initiated by the defendants entitled *WBGI v. Wagner* in Hawaii were the subsequent board's misrepresentations as to the actions of the prior board's decision making and were in no manner an abuse of the broad business discretion granted to the original board, which business decisions made the company extremely well off, poising itself in 2004 as a plum, ripe for the picking, by the subsequent board, which then sucked out its life's blood as it enriched themselves personally.

c)    the Nevada trial of *WBGI v. Wagner* was not on the merits in that the Nevada trial was supposed to be limited to determining whether the Ron Tolman board of directors was properly elected, or the Francik board.  It had been expressly determined previously in Hawaii, and agreed to by Francik's counsel, that no monetary claims were to be litigated in Nevada.   Consequently, Wagner's numerous witnesses (David Adams, Linda Wagner, et al.) who had evidence to offer regarding the fraudulent monetary claim that Wagner was selling the corporate treasury shares and embezzling the money, remained in Hawaii rather than flying unnecessarily to Nevada, as the fraudulent monetary claims being made against Wagner were not at issue in Nevada.   As a consequence of defendants wrongly presenting some monetary claims (which judge Joel Marker in Utah referred to as "bait and switch" tactics  on their part),

asserting they were privileged to do so, the following fraudulent testimony was introduced by Francik and accepted by that court as valid, namely;

> i)    the false claim that Wagner sold WBGI treasury shares and embezzled the money for his own personal purposes.

d)    in fact, Wagner donated 1,000 shares of his partnership position in the Partnership to the World Botanical Gardens Foundation (Foundation), which in turn then divested approximately 700 partnership positions to about 50 new persons who also became partners in the partnership.   The monies that the Foundation received from sale of those positions were then spent on the botanical gardens as a donation to WBGI.   This transaction had been approved in advance by the partnership board.   Wagner retained none of the money.   The "trial" never introduced facts pertaining to spraying of weed-spray, which Wagner acknowledges he sprayed on known weeds over the course of a dozen years (1995 to 2006) in order to develop the botanical garden.     Unfortunately, thereafter the Francik board abandoned efforts at weed control, allowing numerous garden plants to succumb to weedy infestations[2].   In essence, all of the claims by Judge Adams were made based on the lying by Francik, and in the absence of Wagner's witnesses who remained in Hawaii, Judge Adams

---

[2] Weeds grow to 10 feet tall in Hawaii in the short time of 1-2 years, unlike mainland areas where weeds grow slower.

erroneously chose to believe the liar, rather than the person telling the truth.

9.      The above facts are uncontested by way of sworn affidavits filed herein, though they are at odds with the two judges who entered judgments in Hawaii and Nevada based on the frauds worked in their courts, which frauds are now being contested by way of Special Proceedings already prepared, but remaining to be filed in Hawaii and Nevada, detailing more extensively the frauds worked in those courts by the cunning lies of Francik.

## III

## US BANKRUPTCY TRUSTEE MOTION

10.     The US Bankruptcy Trustee makes valid points.  WBGI has not paid the required monthly fees for some six months, and has not filed the required monthly financial statements for that same time period.   Under those facts, dismissal or conversion to Chapter 7 liquidation would normally be the proper procedure.

11.     However, as this Court has become aware, there are unsettled matters, in particular a huge class of preferred Creditor, namely the Partnership which loaned monies to WBGI, as well as numerous claims of fraudulent dealings by the incumbents (defendants), which claims are uncontested so far as the factual affidavits that have been filed.

12.     Further, in support of their motion to appoint a Trustee to manage the

10

affairs of WBGI (and to appoint a new board), Wagner and Andrus are tendering to the US Bankruptcy Trustee the amounts currently due (approximately $3,000+) at the hearing of this matter by way of U.S. Postal Money Order, should this Court grant appointment of a Trustee to reorganize WBGI, rather than convert to Chapter 7 and liquidation.

13.   Additionally, Wagner and Andrus are willing to commit to the US Bankruptcy Trustee that they will keep the US Bankruptcy Trustee current on the required monthly filing fees, and file the requisite financial statements on a monthly basis, red-lining the existing 'finances' as of the hearing date (or subsequent date if determined by the Court).

14.   In light of the fact that the Partnership Creditor Committee that is being formed (under the auspices of Mr. Doug Lee) to look out for the interests of the partners who loaned money to WBGI, prefers to reorganize WBGI and make WBGI profitable once again, and in light of the fact that Wagner, Andrus and others are willing to bring the US Bankruptcy Trustee current on monies owed him/her by WBGI and bring him/her current on the requisite financial statement filings, it behooves this Court to save this business and grant continuing reorganization, albeit under a board of directors that is actually interested in running the company for the benefit of the shareholders rather than for their own personal benefit, and not to liquidate the company.

15.   It is patently obvious that neither Mr. Robinson, nor Mr. Bryant, nor any of the other named defendants are actually interested in salvaging the corporation for the benefit of the shareholders, as are plaintiffs so interested.

16.   The bankruptcy reorganization plan, to be filed by plaintiffs in advance of their tendering the past-due monthly fees owed to the US Bankruptcy Trustee, is allowed pursuant to Chapter 11 U.S. Code section 1121(c) which allows for "*any party in interest*" to file a plan if (1) a trustee has been appointed under this chapter; (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter .... .

17.   Accordingly, plaintiffs are requesting appointment of the requisite trustee so as to allow them to pursue their reorganization plan.  Plaintiffs suggest that either Ms. Sheryl Serreze, Esq. formerly a US Bankruptcy Trustee herself and currently a Nevada bankruptcy attorney, or Mr. Louis Bubala III, Esq., currently a Nevada bankruptcy attorney, or both, be appointed as the WBGI trustee.  They are parties with whom plaintiffs have had positive communication and who are aware that plaintiffs are in the right, and plaintiffs are prepared to compensate them accordingly should they be appointed.

IV

## DEFENDANTS' MOTION - INTRODUCTION

18.  Defendants by and through Mr. Darby set forth various 'theories' as to why the adversary complaint should be dismissed, or alternatively summary judgment granted thereon.  He does so with 'facts' not in evidence, and attempts to rely on prior proceedings in Hawaii and Nevada that are not relevant to the issues at hand, save for the defamation cause of action.  With respect to that cause of action, plaintiffs withdraw that cause of action.

19.  Mr. Darby repeatedly asserts that plaintiff Cal Andrus is not a WBGI shareholder.[3]  He does so in an apparent attempt to deny him standing.  But this is utterly bogus.  As is well attested by sworn affidavit that contradicts Mr. Darby's falsehoods, Mr. Andrus has been a WBGI shareholder since 1995 (and a partner in the Partnership since 1994).

20.  Mr. Darby wonders aloud as to why Mr. Andrus is a plaintiff herein and not supporting the defendants.  He queries "*For reasons that defy logic and common sense, Plaintiff Andrus believes Wagner is the good guy and the individual defendants are the bad guys ...*"[4] But the answer is clear and obvious: Mr.

---

[3]  See footnote #1

[4]  page 27, paragraph 114 of the defendants' motion to dismiss

Andrus is an ethical person, honorably retired as a US Air Force officer[5], who supports truth and advocates against fraud, such as Mr. Darby's and defendants' fraud of proclaiming that Mr. Andrus is not a WBGI shareholder when he is one of the original founders of WBGI, and his name and shareholder information appears extensively in both the Partnership and WBGI databases as a shareholder owning 200 shares.

21.    Mr. Darby is correct that this is a contest between good and evil.  He just happens to be supporting the side of evil ("*good guys*" versus "*bad guys*").

22.    Mr. Andrus knows that Wagner is a good guy because he knows that Wagner worked for ten years with bare minimal compensation to develop a beautiful botanical garden, only to have it stolen and destroyed by vicious liars.

23.    Mr. Andrus knows that Wagner is a good guy because he knows that the Wagners were wrongly arrested in Hawaii based entirely on Francik's lying and prevented from having an actual trial, and that the "evidence" presented at the "trial" was pure fabrication and concoction on the part of the defendants and had nothing to do with reality.

24.    Mr. Andrus knows that Wagner is a good guy because he's read the affidavits of David Adams, Linda Wagner, Walter Wagner and Dan Perkins and

---

[5] This contrasts with "bad guy" Kenneth Francik, who was fired from the LAPD for felony perjury and prosecuted for such.

knows that Wagner was not selling WBGI shares and embezzling the money for his own use as fraudulently claimed by Francik in Nevada, but that instead Wagner donated 1,000 of his own partnership shares to a Foundation that Mr. Andrus had assisted in developing way back in 1994, that the shares sold by the Foundation were used to benefit WBGI's botanical garden and not Wagner, and that the actions in Nevada state court by Francik lying about that were the fraud.

25.    Mr. Andrus knows that Wagner is a good guy because the defendants have not filed a single affidavit that contradicts any of the numerous sworn affidavits filed by Linda Wagner, David Adams, Dan Perkins, Walter Wagner and others that detail the extensive frauds by Francik et al.

26.    Mr. Andrus knows that Wagner is a good guy because he is aware that the defendants never notified the WBGI shareholders of their intentions to sell WBGI lands as required by the By-Laws, and he is aware that their actions in selling the lands devastated the corporation that he had been instrumental in setting up two decades ago.

27.    Mr. Andrus knows that Wagner is a good guy because he is aware that the defendants never notified any of their partners in the Partnership of their intentions to file for bankruptcy, hoping to keep it secret.  Indeed, neither Mr. Andrus, nor Wagner, nor any other partner in the Partnership nor shareholder in WBGI, or other person of interest were noticed of the bankruptcy filing.  Plaintiff

Wagner learned of it via happenstance, when he was appearing in court in Hawaii on his claim for back-pay and it was mentioned in passing by WBGI's Hawaii counsel. Mr. Steve Gustafson, dba *Experienced Based Learning* and a creditor filing herein, likewise learned of it via happenstance. Mr. Andrus learned of it from Wagner, as did Mr. Doug Lee. The fact that they have something to hide is very evident to Mr. Andrus.

28.   Mr. Andrus knows that Wagner is a good guy because he is aware that the defendants are seeking to liquidate the assets of WBGI, unjustly enriching themselves personally by selling that last land parcel at a price well below its original purchase price before $1,000,000 of improvement/development was made to it from Partnership money loaned to WBGI, and not advising any of their partners in the Partnership, whose money was used to purchase the land and improve it, that they were trying to obtain that parcel for only themselves to the exclusion of their other partners.

IV

## DEFENDANTS' MOTION – WAGNER'S QUANTUM MERUIT CLAIM

30.   Wagner's claim for *quantum meruit* has not been litigated as to the exact dollar amount, though established as a valid claim by the appellate court of Hawaii. Because Hawaii has a minimum wage law, his claim at least exceeds the minimum wage amount, which with interest would be approximately

$400,000. Wagner asserts that his claim is more properly valued at approximately $950,000. He is a preferred creditor. Notwithstanding the various attempts to assert that somehow Wagner has been paid, those 'arguments' are mere legalistic gobbledygook on the part of Mr. Darby.

31. This Court can properly assess the valuation of Wagner's claim, following an evidentiary hearing thereon. Alternatively, should this Court elect to appoint a trustee and allow WBGI to reorganize, Wagner is willing to defer collecting on his claim for five years so as to allow WBGI to exit bankruptcy protection in the near future without having to worry about payment of that obligation.

V

## DEFENDANTS' MOTION – FRAUDULENT LAND SALES

32. The effort to portray the WBGI land parcel that defendants Robinson and Bryant seek to acquire for themselves as of low value, is a fraud before this court. No evidence was presented to this court as to the actual value of the land, other than a purported effort to find a purchaser which effort they claim failed. But it is curious indeed that this purported effort to find a purchaser did not include notification to any of Mr. Bryant's and Mr. Robinson's partners in the Partnership that they were looking to sell the parcel. Some 600+ individuals were sufficiently interested to invest $1,000,000+ of their Partnership money in developing the parcel, but not one of them was noticed of these proceedings or

17

that the land was to be auctioned off. This alone clearly smacks of fraud, even absent Wagner's affidavits attesting to the fact that the 1994 price WBGI paid for it was for a far greater amount, that Wagner had spent some $1,000,000+ of Partnership money on developing that parcel, and that it had skyrocketed in value over the decades because of the several zip-line developments up-slope which could benefit tremendously from its State Highway advertising potential.

33.     Accordingly, it is a triable issue of material fact as to whether defendants engaged in fraud in seeking to conceal their proposed sale from their partners in the Partnership, and as to whether the defendants engaged in fraud in under-reporting its valuation to this court. Since there remains a triable issue of material fact as to their fraud pertaining to valuation of WBGI's assets, neither dismissal nor summary judgment is appropriate.

34.     With respect to the other land sales purportedly already consummated, this remains a claim by Mr. Andrus and the other partners of the Partnership and the shareholders of WBGI who were never noticed of any effort to sell WBGI lands, and were never noticed after the fact of any actual land sales. Rather, they were kept in the dark by the defendants, and falsely led to believe by the WBGI webpage that the lands were intact. Again, this is a triable issue of material fact as to whether the defendants deceived and defrauded Mr. Andrus (and the other partners seeking to organize a Creditor Committee) as to those earlier land sales

that were against the WBGI By-Laws, and neither dismissal nor summary judgment is appropriate. The statute of limitations does not apply to Mr. Andrus or the partners or WBGI shareholders because it does not begin to run until they learned of the fraud (which most still have not yet learned of).

VI

## DEFENDANTS' MOTION - MISMANAGEMENT

35.    Defendants seek to rely on the provisions of NRS 78.138 that gives officers and directors of a corporation wide latitude in their business decisions. But it never gives latitude to work a direct fraud, or to lie in court, or to engage in criminal activity using shareholder assets to support that criminal activity.

36.    Yet that is exactly what the defendants did. They deliberately kept the WBGI shareholders in the dark about their land sales before the fact, though the WBGI By-Laws required shareholder approval in advance of such sales. It is thus a triable issue of material fact as to whether deliberately keeping the shareholders in the dark about material decisions that the By-Laws required disclosure on constitutes mismanagement, fraud and waste.

37.    Likewise, Francik knowingly and deliberately lied to a grand jury in Hawaii, as detailed extensively by numerous sworn affidavits and not contested whatsoever, for the purpose of advancing his fraudulent lawsuit. And he used shareholder funds to promote that criminal activity, flying himself to Hawaii on

the shareholder dime to lie to a grand jury.

38.    Thus, it is a triable issue of material fact as to whether that conduct of fraudulent use of shareholder funds to promote fraudulent lawsuits constitutes fraud, waste and mismanagement.

VII

CONCLUSION

39.    Wagner and Andrus spent ten years developing the assets of WBGI, taking it from a little over $0.0 valuation in 1995 to approximately $10,000,000 in valuation in 2004.

40.    In 2004, Francik and others saw the high value of the assets of WBGI and desired them for themselves, and conceived an elaborate plan to deprive their other partners of their assets.  Over the course of a decade, between 2004 to present, they took the valuation of WBGI from $10,000,000 to approximately $2,000,000+ (the current approximate valuation of the last parcel) working extensive frauds along the way detailed by numerous sworn affidavits filed herein.

41.    Defendants now seek final liquidation of WBGI, enriching themselves with transfer of the last remaining WBGI asset to themselves personally.  They purported a "cash deal" but in reality very little cash changed hands, and rather new promissory notes were issued to those holding promissory notes against

WBGI.

42.    Plaintiffs Andrus and Wagner filed an adversary complaint in an effort to stop that fraud, and in the hope that a trustee will be appointed by this Court to reorganize WBGI along the lines they will set forth in their WBGI Reorganization Plan to be filed prior to the hearing of this motion.  Reorganization is the only proper course of conduct, in light of the extensive frauds worked by the defendants.  Reorganization will work because it will be led by the original WBGI founders who were able to successfully organize WBGI in the first instance, and they have extensive experience in Hawaii.  The fact that that remaining parcel of land can be a viable business in its own right is known to the defendants, as they are seeking to continue the WBGI business, albeit under their own two-person partnership rather than under the original 1994 Partnership or WBGI corporation formed by the Partnership in 1995.

43.    To recapitulate, WBGI has appeared before this bankruptcy Court with numerous falsehoods, omissions to disclose when a duty to disclose exists, and inaccurate information that cries out for reorganization.    Specifically, this includes:

    a)    The fraudulent claim that Cal Andrus lacks standing and is not a WBGI shareholder when he is an original shareholder from 1995;

    b)    The failure to disclose the largest single preferred creditor known to

the defendants, namely the Partnership for which <u>each</u> defendant signed a participation agreement before being admitted into the partnership;

c)   The false claim that they tried to find a buyer for the last parcel of land, but were unsuccessful, when in fact there is a very large pool of prospective purchasers, namely the Partnership of which they are members;

d)   The false claim that plaintiff Wagner is not owed money on his *quantum meruit* claim, when but for the work he did, there would be no developed land parcel they covet;

e)   The extensive frauds worked by Kenneth Francik et al. in taking WBGI to the point of very little asset, whereby they seek to now claim they can't run the company as a corporation, but they can run it as a two-person partnership.

44.   In essence, the defendants sowed their own misfortunes by the extensive lies and frauds worked on the company and Wagner, and continue to work frauds before this Court.

WHEREFORE, it is respectfully requested that this Court deny defendants' motion in its entirety, and grant plaintiff's request to appoint a Trustee to reorganize WBGI under the Reorganization Plan that plaintiffs submit.

DATED:   April 4, 2004

Walter L. Wagner